IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MICHAEL B. SELIG,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 14-cv-5303** |
| | : | |
| **NORTH WHITEHALL TOWNSHIP** | : | |
| **ZHB, ET AL.,** | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

Stengel, J.                                                        December 17, 2014

This is essentially a zoning appeal presented as a civil rights case. Michael Selig's

application for a special zoning exception was denied by the North Whitehall Township

Zoning Hearing Board (ZHB). He appealed this denial unsuccessfully to the Lehigh

County Court of Common Pleas and then to the Pennsylvania appellate courts. The

defendants move to dismiss the case under Rule 12(b)(1) for lack of subject matter

jurisdiction. For the reasons explained below, I will grant their motions, but allow the

plaintiff leave to amend his complaint.

    **I.**    **Background**[1]

        **a.  The Initial Zoning Application**

---

[1] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

While many of the facts in this section are not necessary to reach my decision, I offer them because it would be difficult to understand what is at issue in this case without them.

Michael Selig is a cardiologist who has been in private practice for 25 years.[2] Selig is also a licensed commercial helicopter pilot, certified helicopter flight instructor, and airplane pilot.[3] He operated a FAA certified helicopter air charter in the Lehigh Valley for 12 years.[4] He had planned to build a private airport/heliport on a fifty-acre property located at 5471 Route 309 in Schnecksville, Pennsylvania 18078 in North Whitehall Township.[5] The helicopter and heliport would be used "to retrieve/deliver, transport donor transplant organs from and to desired destinations and then return to the property."[6] Selig also planned to live on the property.[7]

Before buying the property, Selig allegedly spoke with North Whitehall zoning officer Kenneth Nicholson about his intent to establish a private airport/heliport.[8] The property is in an agricultural/residential zoning district.[9] Establishing this airport/heliport would require a special zoning exception.[10] He claims that Nicholson told him getting

[2] See Doc. No. 1-3 at 25. The plaintiff is a non-board certified cardiologist. He claims that he was unable to pass his licensing boards because he has a learning disability. See id. at 26, 33-36, 50-51, 61-62.

[3] See id. at 25, 40.

[4] See id.; Doc. No. 14, Ex. 5 at 8. This company appeared to be named DR Helicopters LLC. See Doc. No. 14, Ex. 5 at 7-8.

[5] See Doc. No. 1-3 at 63-64; Doc. No. 14, Ex. 5 at 5.

[6] Compl., Doc. No. 1 at 9; 1-3 at 10. The plaintiff planned to use the helicopter owned by DR Helicopters LLC. See Doc. No. 14, Ex. 5 at 7. This helicopter was allegedly transferred to another company owned by the plaintiff named Aerotierra LLC, which I talk more about below. Id. at 19. DR Helicopters was previously known as M & R Helicopters. Id. at 20. The fees for this service though were to be charged to DR Helicopters. Id. at 22.

[7] Compl., Doc. No. 1 at 9; Doc. No. 14, Ex. 5 at 7.

[8] Compl., Doc. No. 1 at 9.

[9] Compl., Doc. No. 1 at 9, 1-3 at 4-5. See also Doc. No. 14, Ex. 5 at 29-30.

[10] Compl., Doc. No. 1 at 9, 1-3 at 4-5. See also Doc. No. 14, Ex. 5 at 29-30.

this exception would not be a problem.[11] Based on these discussions, the plaintiff and/or Aerotierra LLC purchased the property in March 2012.[12] Selig is the sole member and owner of Aerotierra LLC, a holding company organized for the purpose of owning the Schnecksville property.[13]

The plaintiff began to make repairs to the property in order to bring it into compliance with local, state, and federal laws.[14] After several site inspections, the Pennsylvania Department of Transportation, Bureau of Aviation, issued a Private Group License to the plaintiff on July 12, 2012, allowing him to conduct helicopter operations at the property.[15] The FAA also granted the plaintiff conditional approval for a private use landing area on the property after inspecting the property.[16]

The plaintiff submitted an application to the North Whitehall Township Zoning Hearing Board (ZHB) requesting a special exception and variance to operate a private

---

[11] Nicholson had indicated in a letter that he believed "this proposal meets the requirements of the Zoning Ordinance." However, that letter was dated July 19, 2012, after the property had been purchased. The letter also explained that additional information about the noise and height of the aircraft was needed. See Compl., Doc. No. 1 at 9. See also Doc. No. 14, Ex. 5 at 2, 30-31.

[12] Compl., Doc. No. 1 at 16.

[13] See id.; Doc. No. 14, Ex. 5 at 5.

[14] Nicholson also explained that "the 12 years of U.S. Department of Environmental Protection Agency (EPA) and Lehigh County Conservation District violations cited for that property must be cleared before proceeding with the Airport/Heliport application." The plaintiff allegedly evicted tenants in the house on the property which he described as "dilapidated" and "vermin infested" in order to remediate health hazard violations. A log building on the property and road also required remediation to be brought into EPA compliance. Compl., Doc. No. 1 at 9-10. See also Doc. No. 14, Ex. 5 at 6-7.

[15] Compl., Doc. No. 1 at 12; 1-3 at 11, 15; Doc. No. 14, Ex. 5 at 11, 14.

[16] Id. at 10.

airport/heliport on the property.[17] The ownership interests of Selig and Aerotierra in the property at the time of the application are unclear. Selig applied as "an equitable owner, tenant, occupant and sole user" of the property.[18] He claims that he purchased the property with his personal funds but then deeded the property to Aerotierra LLC.[19] The complaint also states that he is the "sole, individual owner of the subject property that was originally titled under the Limited Liability Company known as Aerotierra."[20] The application was amended to include both Selig and Aerotierra LLC as applicants.[21] The Board indicated that Aerotierra LLC owned the property.[22] However, it considered Selig and Aerotierra as interchangeable in terms of ownership.[23]

Several zoning hearings regarding the plaintiff's application were held.[24] At the first and second hearings, the plaintiff was unrepresented by counsel.[25] After the third, he

---

[17] Compl., Doc. No. 1 at 10. The exact date of the application is unclear. From the information provided it appears to have been made sometime before July 24, 2012 because the first hearing on the application was held on that date. See Compl., Doc. No. 1 at 11.

[18] Id. at 10.

[19] Id. at 16.

[20] Id.

[21] See Doc. No. 14, Ex. 5 at 5 n. 2; Compl., Doc. No. 1 at 16; 1-3 at 64 n. 2. Selig claims this is untrue. Compl., Doc. No. 1 at 16.

The Department of Transportation and FAA approvals were in Selig's name. According to Selig, this was necessary because they could only be issued to a "direct named responsible aviation personal party." Id. at 24.

[22] Doc. No. 14, Ex. 5 at 5.

[23] Id. at 5 n. 2. The Board explained that it did not address the issue of standing because Smith did not raise it in his brief or the oral argument on January 3rd. It also considered the amendment of the application to include Aerotierra to correct any standing concern. See id.

[24] Overall, nine hearings occurred between June 24, 2012 and February 27, 2013, including a hearing on the plaintiff's motion for reconsideration. Compl., Doc. No. 1 at 11, 13.

[25] Doc. No. 14, Ex. 5 at 2.

was represented by Attorney James L. Zulick.[26] At these hearings, neighbors expressed concerns that the plaintiff would be flying airplanes too low or too near to their properties.[27] The plaintiff amended his application for only a heliport and not a heliport and private airport combined.[28]

At the third meeting, Sheila and Raymond Sloyer, represented by their attorney Eric Smith, entered a formal appearance to intervene.[29] Smith is Shiela's son and Raymond's stepson.[30] The Sloyers owned the southwest neighboring property to the Schnecksville property but lived in Heidelberg Township, not North Whitehall Township.[31] Their property would be closest to the proposed helipad.[32] They opposed the application.[33] Others who objected to the application did not enter a formal appearance.[34]

---

[26] Id.

[27] Compl., Doc. No. 1 at 11. In his letter, Nicholson did note that additional testimony about noise levels and height of the aircraft on flight was needed. See Doc. No. 1-3 at 4-5. The Board found that noise, however, would not present any adverse effects on the neighborhood. See id. at 18. See also Doc. No. 14, Ex. 5 at 23-24, 27.

[28] Compl., Doc. No. 1 at 11-12. See also Doc. No. 14, Ex. 5 at 30.

[29] Compl., Doc. No. 1 at 11.

[30] Id. at 11, 15.

[31] See Doc. No. 1-3 at 64, 68; Doc. No. 14, Ex. 5 at 24, 25-26.

[32] See id. at 24.

[33] Compl., Doc. No. 1 at 11; Doc. No. 14, Ex. 5 at 26-27.

[34] Doc. No. 14, Ex. 5 at 2, 4, 27-29.

After a public hearing on January 3, 2013, a two-member Board rendered an oral decision denying the application.[35] Before this hearing both the Sloyers' attorney and the plaintiff's attorney had submitted legal briefs; both attorneys also presented oral arguments at that hearing.[36] The plaintiff filed a request for reconsideration of the decision on January 11, 2013.[37] On January 30, 2013, a public hearing on this request was held.[38] The Board affirmed the previous application denial.[39] On February 13, 2013, the Board rendered a written, final decision denying the application.[40] The Board

---

[35] The Board indicated that this January 3rd decision was considered an "appeal." From the record, it appears that the initial denial of the application came from the Board solicitor. It is not entirely clear from the opinion what the procedure entailed. See id. at 2-4.

The Board allegedly informed only two members were available. This still gave the Board a quorum but could result in a denial if the decision was split. The Board gave the plaintiff the option to continue until three members were available but the plaintiff allegedly waived this option and indicated he was willing to proceed. See id. at 4-5.

[36] Id. at 3.

[37] Compl., Doc. No. 1 at 13; Doc. No. 14, Ex. 5 at 3.

[38] Doc. No. 14, Ex. 5 at 3-4.

[39] According to the plaintiff, the Board simply reiterated its prior decision points. Compl., Doc. No. 1 at 13. See Doc. No. 14, Ex. 15 at 4. According to the plaintiff the Board denied his application because: 1) "Only private airports were claimed to be listed uses in the agricultural-rural-residential zoning category;" 2) "There is no direct listing, specifically for heliports in the zoning district chart;" 3) "The Pa. Department of Aviation license issued to [the plaintiff] was for a Heliport, addressing the safety of the take-off and landing procedures for the only aircraft use under the license, not mentioning airplanes or runways;" 4) "Therefore, the Township claimed [the plaintiff's] application did not meet the criteria of ordinance 402.4(f) pertaining to runway specifications even though the runway is not necessary for helicopter operations." Compl., Doc. No. 1 at 13.

The Board in its written decision, however, indicated that it did modify its rationale on the reconsideration motion. See Doc. No. 14, Ex. 5 at 33.

[40] Compl., Doc. No. 1 at 13; 1-3 at 17-19. I will note that the copy of the Board's decision which the plaintiff attached to his complaint is not complete and is missing pages. The full 54-page decision can be found in Doc. No. 14, Ex. 5. I presume this was an oversight on the part of the plaintiff and not an intentional attempt to provide only those sections of the decision which support his arguments. Since the decision is in the public record, I have taken judicial notice of the full opinion when citing to it.

essentially found that heliports were not permitted by special exception in

agricultural/residential zoning districts according to the zoning ordinance.[41]

### b.  Plaintiff's Appeal to the County

The plaintiff appealed the Board's decision to the Court of Common Pleas of

Lehigh County.[42] The case was first assigned to Judge Riebman and then transferred to

Judge Johnson.[43] On April 19, 2013, the plaintiff filed a petition for recusal of Judge

Johnson and change of judge.[44] He claims that Judge Johnson, who presided over the

plaintiff's eight-year "egregious and protracted divorce action," was prejudiced and

treated him cruelly.[45] The Sloyers, represented by Smith, petitioned the court to intervene

in the appeal.[46] The plaintiff opposed this intervention.[47] North Whitehall Township ZHB

was a non-participating appellee.[48] At some point during the proceedings, Selig also filed

a petition to have Smith removed as counsel for the Sloyers, claiming he had a conflict of

interest as their son. Judge Johnson denied this petition.[49]

---

[41] See Doc. No. 14, Ex. 5 at 35-39, 50-52.

[42] Compl., Doc. No. 1 at 14.

[43] Id.

[44] Id.; Doc. No. 1-3 at 20-48.

[45] Compl., Doc. No. 1 at 14. Judge Johnson may also have presided over litigation over land use in South Whitehall Township, which last eight years. See id. See also Doc. No. 1-3 at 40-45 (discussing the reversal of special exception permit from South Whitehall Township by ex-wife).What this litigation involved is entirely unclear.

[46] Compl., Doc. No. 1 at 14.

[47] Id.

[48] Id. at 18.

[49] Id.

On October 9, 2013, Judge Johnson held a hearing on merits of the land use denial. During the course of the hearing, the question of whether plaintiff had standing was raised.[50] Judge Johnson determined that Selig did not have standing because Aerotierra LLC owned the property, Selig was not an attorney so could not represent the corporation, and that an appeal by Aerotierra would now be time-barred.[51] On October 29, 2013, Judge Johnson granted the plaintiff's petition for reargument, which was filed by counsel the plaintiff had hired.[52] At a hearing on January 8, 2014, Gary Brienza, Esq. represented Aerotierra LLC and Selig during the reargument.[53] On January 8, 2014, Judge Johnson affirmed his previous order on the basis of standing.[54] On January 15, 2014, Mr. Brienza withdrew as the plaintiff's attorney.[55]

### c.  Appeal to the Commonwealth and Supreme Courts

Selig appealed Judge Johnson's decision to the Commonwealth Court.[56] North Whitehall Township ZHB was again a non-participating appellee.[57] On July 22, 2014, the

---

[50] Id. at 16.

[51] Id. at 16-17. The plaintiff claims this Order came two years after the zoning board's decision. This seems to be impossible since the decision was made in January 2013. See id. at 16.

[52] Id. at 17-18.

[53] Id.

[54] Id. at 18.

[55] See Doc. No. 1-3 at 69.

[56] Compl., Doc. No. 1 at 19.

[57] Id.

Commonwealth Court affirmed the lower court's decision on standing only.[58] The

plaintiff petitioned for reconsideration, which the Commonwealth Court denied.[59]

On September 23, 2014, the plaintiff appealed this decision to the Pennsylvania

Supreme Court. The petition for allowance of appeal is currently pending.[60]

### d.  Federal Court Action

The plaintiff filed this action *pro se* in the Eastern District of Pennsylvania on

September 15, 2014. The complaint indicates that it is being brought under § 1983 for

due process violations. The cover page of the complaint names "North Whitehall

Township ZHB Non-participating Appellee and Eric Smith, Esq., Son, Sheila Sloyer,

f/k/a Sheila Selig *Smith* Raymond Sloyer Interveners" as defendants.[61] Dr. Selig seeks to

have the special exception granted, for the case to be remanded to a judge other than

Judge Johnson, for Mr. Smith to be removed as counsel for the Sloyers, and for the

Sloyers to be prevented from intervening in the case.[62] The defendants moved to dismiss

the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1).

### II.     Jurisdictional Issues[63]

---

[58] Id.

[59] Id. at 18-19, 47.

[60] See Doc. No. 14-1 at 4.

[61] See Compl., Doc. No. 1 at 1 (emphasis in original). I will note that the plaintiff also moved to unjoin the Sloyers and Smith from his action by separate motion. See Doc. No. 11.

[62] See Compl., Doc. No. 1 at 46.

[63] Federal question jurisdiction would be the only avenue by which this court could have jurisdiction. The plaintiff makes no request damages and all of the parties to this action are residents of the Commonwealth of Pennsylvania. The "complaint" fails on its face to demonstrate the existence of diversity jurisdiction. See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412 (3d Cir. 2010)(to invoke diversity jurisdiction the amount in controversy must exceed $75,000 and each defendant must be a citizen of different state from each plaintiff).

Lower federal courts (i.e. district courts) are courts of original, not appellate jurisdiction. See, e.g., Guarino v. Larsen, 11 F.3d 1151, 1156-57 (3d Cir. 1993)("District courts lack subject matter jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction not appellate jurisdiction on the district courts."). They do not have the authority to directly review state court decisions. See Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414 (1923).

It is clear from the face of Dr. Selig's complaint that it presents jurisdictional problems. Selig formats the complaint as an appellate brief, offering a Statement of Questions, Statement of the Case, and Argument sections.[64] He also refers to himself as the "appellant" throughout the brief. He specifically addresses "errors" made by the state court, such as whether the court erred in dismissing his case, allowing intervention by the Sloyers, or not fully considering his rights on appeal.[65] The plaintiff argues the merits of whether the dismissal based on standing (i.e. the ultimate issue on appeal in the state

---

[64] See Compl., Doc. No. 1.

[65] He points to the following "errors" in his "Statement of Questions:
  1) Did the court failed to consider or address his rights to apply for a special exception and appeal it individually as a tenant or occupant of his property completely separate from the technical ownership?
  2) Did multiple due process violations occur throughout this case?
  3) Did the trial court err in dismissing the case?
  4) Did Mr. Smith engage in acts of fraudulent concealment, malicious and frivolous prosecution?
  5)  Was the interveners' standing questionable from the onset, to further unduly delay, complicate, subterfuge the facts as to pervert the course of justice?
See Compl., Doc. No. 1 at 8. See also id. at 3-6 (implying that his right to appeal was infringed and that intervention was unwarranted).

He also has moved to unjoin the Sloyers and Smith as intervenors, though he included them as defendants in this case. This also indicates he is trying to appeal the state court decision, rather than sue them for liability under federal law. See Doc. No. 11.

courts) was appropriate.[66] In his requests for relief, Dr. Selig makes clear that he wants the zoning board's decision to be undone.[67]

This court does not have jurisdiction over appeals of the Pennsylvania Commonwealth Court's decisions. Dr. Selig's only appellate recourse would be to appeal the Commonwealth Court's decision to the Pennsylvania Supreme Court, which he has done. He can then appeal the Pennsylvania Supreme Court's decision to the United States Supreme Court. See Blake v. Papadakos, 953 F.2d 68, 71-72 (3d Cir. 1992); 28 U.S.C.A. § 1257. Because the plaintiff's complaint is presented as an appeal of the Commonwealth Court's decision, it should be dismissed for lack of subject matter jurisdiction. See Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York & New Jersey Police Dep't, et al., 973 F.2d 169, 178 (3d Cir. 1992)("[T]he Rooker–Feldman doctrine precludes federal review of lower state court decisions, just as it precludes review of the decisions of a state's highest court.").

## III.    Allegations of Due Process Violations

In the context of this misguided zoning appeal, Dr. Selig contends his zoning board process was "flawed." He alleges that the zoning board may not follow its own procedures and may have been tainted by conflicts of interest.[68] He also indicates that

---

[66] See id. at 16-17, 20-25, 36-44.

[67] Selig specifically asks for: 1) his special exception to be granted, 2) the case to be transferred back to a different judge on remand, and 3) the intervener's status to be reversed and withdrawn. He also requests that Mr. Smith be prohibited from representing the Sloyers as counsel. See id. at 46.

[68] See Compl., Doc. No. 1 at 10-11, 25 (claiming that the "initial zoning hearing posed a judicial problem when the required tie breaking third board member was unavailable," the zoning hearing board solicitor had conflicts of interest, the decision to allow the solicitor to be involved despite these conflicts involved a closed-door meeting of

another property, presumably within North Whitehall Township, had received approval

for a heliport.[69] Dr. Selig is a *pro se* plaintiff so I am obliged to construe his complaint

liberally. See, e.g., Haines v. Kerner, 404 U.S. 519, 520–521 (1972). These allegations

raise a specter of separate due process violations which a §1983 claim could address.[70]

Assuming Selig's complaint asserts a § 1983 claim against the North Whitehall

Township Zoning Hearing Board, this court could have jurisdiction. The Commonwealth

Court made clear that it affirmed the lower court only on the issue of standing. It did not

reach the merits of Selig's alleged constitutional violations.[71] A federal district court

could entertain those claims without running afoul of the *Rooker-Feldman* doctrine.

Under the *Rooker-Feldman* doctrine, "federal district courts lack subject matter

jurisdiction to review final adjudications of a state's highest court or to evaluate

constitutional claims that are 'inextricably intertwined with the state court's [decision] in

a judicial proceeding.'" Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir.1992) (quoting

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983)); see

also Rooker v. Fidelity Trust Co., 263 U.S. 413, 414 (1923). See also Port Authority

---

which there is no record and the plaintiff could not attend, and one of the zoning board members making the decision may have had a conflict of interest).

[69] Selig also indicates that a heliport was approved under the same ordinances on 2132 Ranch Road. In context, it would seem that this property is also in North Whitehall Township but this fact is not entirely clear from the complaint. See Compl., Doc. No. 1 at 12.

[70] He also makes several allegations that Judge Johnson and/or the Judge McGinley and the Commonwealth Court made incorrect determinations of the law. See Compl., Doc. No. 1 at 22-23, 25-29. If the process by which they reached these decisions was tainted, the plaintiff may be able to make out a due process violation. However, if the plaintiff simply disagrees with the courts' interpretation of the law, this challenge is more akin to an appeal than a § 1983 claim. The judges are not named as defendants in this case.

[71] See Selig v. The Zoning Hearing Board of North Whitehall Township and Raymond and Sheila Sloyer, No. 180 C.D. 2014,  4 n. 3 (Pa. Commwlth. Ct. Jun. 13, 2014), Doc. No. 1-1 at 18-21 (Commonwealth Opinion)(indicating that the decision was based on the dismissal for lack of standing and did not address the alleged "multiple breaches of Due Process [that] occurred throughout this case"). See also Compl., Doc. No. 1 at 25.

Police Benev. Ass'n, Inc. v. Port Authority of New York & New Jersey Police Dep't, et al., 973 F.2d 169, 178 (3d Cir. 1992)("[T]he *Rooker–Feldman* doctrine precludes federal review of lower state court decisions, just as it precludes review of the decisions of a state's highest court."). But when state court adjudications turn on the issue of standing and the state court does not reach the merits of a party's constitutional claims, a party would not be barred by *Rooker-Feldman* to have those claims heard in a federal forum. See Gulla v. North Strabane Twp., 146 F.3d 168, 171-74 (3d Cir. 1998)(explaining how Rooker-Feldman did not bar party from bringing constitutional claims in federal court though appeal of zoning board decision was pending before state Supreme Court because lower courts' decisions were based on the issue of standing and not the substance of their constitutional claims).[72]

If the plaintiff seeks to assert due process and other violations of his constitutional rights during the course of his interactions with the zoning board under § 1983, the plaintiff's claims may be "sufficiently independent of the state court proceedings to escape application of the *Rooker–Feldman* doctrine." Koynok v. Lloyd, No. 08–4302, 328 Fed.Appx. 133, 137 (3d Cir. May 15, 2009)(explaining that "under certain sufficiently extreme circumstances, federal courts may consider Due Process claims in the land use context without danger of becoming a 'zoning board of appeals'").

---

[72] This, of course, assumes that the plaintiff's claims are not "intricably intertwined" with the state court's decision. It is unclear from what the plaintiff has provided whether his claims be "intricably intertwined." If the plaintiff is attempting the "expressly or implicitly attempt to reverse the state court decisions," the plaintiff's claims would be barred by the *Rooker-Feldman* doctrine. See Cambria County Children and Youth Services v. Lucas, No. 04-4403, 137 Fed.Appx. 448, 449 (3d Cir. May 9, 2005)(explaining how plaintiff's challenge to the termination of his parental rights by the state would be barred by *Rooker-Feldman* because his goal was to have rights reinstated).

At this point, the plaintiff's complaint does not make out the requisite elements of a § 1983 due process claim.[73] He does not explain what specific actions by the North Whitehall Township Zoning Board itself violated his due process rights under § 1983. However, his allegations of conflicts of interest and/or tainted procedures by the zoning board could possibly provide a basis for a § 1983 claim, *if properly pled*. For this reason, I will allow him leave to file an amended complaint against the zoning board.

With regards to his claims against the Sloyers and Smith, amendment to these claims would be futile. He has not explained how the Sloyers and Smith, who are not state actors nor acting under the color of state law, could be liable under § 1983.[74] Even

---

[73] The plaintiff also alleges that Smith and the Sloyers "colluded, conspired with, as accomplice to, or in support of, to incite physical acts by others against [him] that caused emotional distress to further harass, threaten and mentally harm [him] including [his] house being broken into and burglary." Compl., Doc. No. 1 at 12. This sentence seems to allege a possible conspiracy claim, intentional infliction of emotional distress claim, and/or trespass claim against Smith and the Sloyers. However, the elements of each of these and facts to support these allegations have not been pled.

[74] It is not entirely clear what "wrongdoing" the Sloyers and Smith committed. Selig claims that they acted inappropriately by "outrageously protract[ing]" the application process. Compl., Doc. No. 1 at 11, 30. The plaintiff also saw these actions an "annoyance and intrusion in the case" which "directly financially and emotionally harmed" him. Compl., Doc. No. 1 at 14. He also claimed that Smith and the Sloyers "unduly affected, embarrassed, complicated and prejudiced the adjudication of the [plaintiff's] rights, resulting in a breakdown of the courts operations, undermining the truth determining process so that no reliable guilt or innocence could have taken place." Compl., Doc. No. 1 at 14-15. The process required nine hearings which occurred between June 24, 2012 and February 27, 2013. Id. at 11. In the plaintiff's opinion, such a "simple listed special exception use" should not have taken as long. Id. Dr. Selig indicates that he was granted "aviation use" in South Whitehall Township" after only two "*pro se*" meetings." See id. at 7.

The plaintiff also accused Smith of not disclosing the fact that he was the son/stepson of the Sloyers and that he had grown up in the home in which the Sloyers currently reside. Id. at 11, 15. Allegedly, Smith is the "heir to that property" which the plaintiff claims is a conflict of interest. Id. at 15, 30-33. The plaintiff is alleging that this behavior was fraudulent and was meant to "delay, divert and subterfuge the Zoning Hearing Board to misconstrue the definitions of Airport and heliport and rule against [Selig's] listed land use request." Id. at 11; see also id. at 30-36. He also claims that Smith worked at no cost as part of the litigation. As a result, he was able to prolong the litigation. Id. at 15; see also id. at 30-36. The plaintiff saw this behavior as inappropriate and prejudicial to him.

The plaintiff also alleges that the Sloyers "rallied up and escalated ill acts and opposition to [his] land use, going door to door to excite the community to post signs of objection to [his] airport/heliport…" Id. at 12. Allegedly, one of those signs was posted on the plaintiff's property itself, leading to an inference that someone trespassed to put it there. He claims it was the Sloyers who had done so. Id. See Doc. No. 1-3 at 72 (picture of a sign protesting airport; where it is located is not clear from the picture). He also claims that the Sloyers illegally hunted on his property and

construing the allegations he makes against the Sloyers and Smith broadly, drawing all possible inferences in his favor, I cannot see how these would present a viable § 1983 claim against them.[75] The claims against them will be dismissed without leave to amend.

## IV.   Conclusion

For the reasons stated above, I will grant the defendants' motions to dismiss. The claims against the North Whitehall Township Zoning Hearing Board will be dismissed without prejudice.[76] The claims against the Sloyers and Smith will be dismissed with prejudice.

The plaintiff shall have **fourteen (14) days** to file an amended complaint to cure the deficiencies explained in this memorandum, if such corrections are possible.

An appropriate Order follows.

---

dumped trash on his property. Compl., Doc. No. 1 at 12. Lastly, he claims that the Sloyers, through Smith, caused him "mental and physical harm" by making "three separate threat letters" against him, which threatened to impose sanctions on him under Rule 1023. Id. at 12-13. He attached these letters to his complaint. See Doc. No. 1-3 at 73-75.

While the plaintiff's allegations against the Sloyers and Smith may give rise to other legal claims (i.e. trespass, etc.), they could not give rise to a § 1983 if Sloyers and Smith acted as private citizens.

[75] The plaintiff has also moved to unjoin the Sloyers and Smith as parties to this action. What he seeks by this motion is somewhat unclear. However, its title indicates that he too believes they are no longer appropriate parties. See Doc. No. 11.

[76] North Whitehall Township ZHB also moved, in the alternative, for a more definite statement. A more definite statement does not seem appropriate in this situation. While the plaintiff's complaint is a bit unintelligible at parts, it is not unintelligible or ambiguous on the issue regarding jurisdiction. See Fed. R. Civ. P. 12(e)("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."). See also Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir. 1967).  From all that has been offered in the complaint, the plaintiff is attempting to appeal the Commonwealth Court's decision. However, the parts which relate to his due process violations are more lacking in factual detail. See Retzlaff v. Horace Mann Ins., 738 F. Supp. 2d 564, 568-69 (D. Del. 2010)("Typically, the court restricts the use of [a motion for a more definite statement] to pleadings suffering from unintelligibility rather than the want of detail.")(citations omitted).  For these reasons, amendment seems to be the more appropriate remedy.